UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL BRAUNSCHEIDEL,

                Plaintiff,

    -against-                                        3:12-CV-1004 (LEK/DEP)

STRYKER CORPORATION; and
STRYKER SALES CORPORATION,

                Defendants.

_____

**MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

On June 20, 2012, Plaintiff Michael Braunscheidel ("Plaintiff") filed a Complaint against Defendants Stryker Corporation and Stryker Sales Corporation (collectively, "Defendants"), invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. Dkt. No. 1 ("Complaint"). In the Complaint, Plaintiff asserts causes of action for: (1) negligence and negligence *per se*; (2) strict products liability; (3) breach of express warranty; (4) breach of implied warranties; (5) fraudulent misrepresentation; (6) fraudulent concealment; (7) negligent misrepresentation; and (8) fraud and deceit. Id. ¶¶ 66-188.

On August 24, 2012, Defendants filed a Motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 7 ("Motion"). In response, Plaintiff filed both an Amended Complaint and a Response in Opposition to Defendants' Motion on September 17, 2012. Dkt. Nos. 14 ("Amended Complaint"), 15 ("Response"). In his Amended Complaint, Plaintiff does not allege a cause of action for an breach of an express warranty or for breach of implied warranties. See Am Compl. Defendants then filed

a Reply to Plaintiff's Response on September 24, 2012. Dkt. No. 16 ("Reply"). Presently before the Court is Defendants' Motion to dismiss.[1]

**II.     BACKGROUND**

The Court presumes the parties' familiarity with the factual allegations underlying this action and recites them here only to the extent necessary to resolve the instant Motion. For a more complete statement of the facts, reference is made to the Amended Complaint.

On February 14, 2006, Plaintiff underwent arthroscopic surgery on his right shoulder at Binghamton General Hospital in Binghamton, New York. Am. Compl. ¶ 21. After the surgery was performed, Dr. Douglas R. Kerr ("Dr. Kerr") implanted a catheter for a Stryker Pain Pump 1 ("Pain Pump") into Plaintiff's right shoulder joint in order "to continuously infuse local anesthetic into the shoulder joint." Id. This continued for two days following the surgery. Id. At first, Plaintiff's post-operation progression went as expected; however, "after the pain of the healing process began to wane, a new and different pain set in." Id. ¶ 22. On April 11, 2006, Plaintiff visited Dr. Kerr complaining of "clicking, popping, catching and pain." Id. Dr. Kerr recommended conservative treatment to Plaintiff. Id. However, despite going to physical therapy, Plaintiff continued to have issues with his shoulder, including a decrease in his range of motion and flexibility. Id. ¶ 23. These problems persisted, and by the fall of 2006, Plaintiff's severe shoulder pain prevented him from swimming or participating in recreational sports. Id. ¶ 24.

---

[1] On October 4, 2012, Defendant filed a Letter Brief with the Court explaining "that the parties have conferred and agree that the pending Motion to Dismiss the Complaint . . . responds to both Plaintiff's Complaint and Plaintiff's Amended Complaint." Dkt. No. 21 ("Letter Brief"). Plaintiff has not filed a response contesting the Letter Brief. See Dkt. The Court therefore finds the Amended Complaint to be the operative pleading in this matter and construes the Motion as seeking its dismissal.

Over the next couple of years, Plaintiff sought assistance from a number of different physicians including: Dr. Edward Hemphill of Lexington Orthopedic Associates in Lexington, Virginia, who recommended that Plaintiff continue physical therapy; Dr. Kevin Hastings in Vestal, New York, who "continued to conservatively treat the Plaintiff through 2010 for his chronic shoulder pain"; and Dr. Richard White, a family practitioner in Austin, Texas, who referred Plaintiff to Dr. Eugene P. Schoch, III ("Dr. Schoch"), in late 2008. Id. ¶¶ 25-27. On February 18, 2009, Plaintiff had an appointment with Dr. Schoch, an orthopedic specialist at the Austin Bone & Joint Clinic in Austin, Texas, who recommended that Plaintiff have a MRI. Id. ¶ 28. Plaintiff underwent the MRI on February 27, 2009, at the Austin Surgical Hospital in Austin, Texas, which revealed "glenohumeral joint arthritis involving the inferior glenoid and inferior humeral head." Id. ¶ 29. On March 13, 2009, Plaintiff and Dr. Schoch discussed the results of the MRI, at which point Plaintiff was informed of cartilage damage in his shoulder. Id. ¶ 30. Dr. Schoch diagnosed this as arthritis, "a common result of both surgery and aging," and conservative treatment was again recommended. Id.

In the spring of 2009, Plaintiff began conducting online research in an attempt to find an explanation for his shoulder pain and why it had not improved. Id. ¶ 31. On June 29, 2009, Plaintiff found "an advertisement from a lawyer's office suggesting a link between the intra-articular use of pain pumps and the development of chondrolysis." Id. ¶ 32. Upon making this finding, Plaintiff contacted Dianne Fenner, a Philadelphia, Pennsylvania attorney, "and for the first time . . . became aware that he may have a new injury related to the use of a pain pump and not merely a continuation of his pre-existing shoulder injury." Id. On February 17, 2010, Plaintiff again had an appointment with Dr. Schoch and told him that he had been injected with an intra-

3

articular Pain Pump following his initial shoulder surgery. Id. ¶ 33. Dr. Schoch then reviewed Plaintiff's records and noted that what had previously been diagnosed as arthritis may actually be chondrolysis. Id. On January 19, 2012, Plaintiff saw Dr. Samer Hasan, an orthopedic surgeon, who diagnosed him with chondrolysis. Id. ¶ 34.

Plaintiff claims that Defendants, who design, manufacture, and develop the Pain Pump, are responsible for the injuries he has suffered. Id. ¶¶ 10, 35. Plaintiff contends that "[a]s a direct and proximate result of Stryker's misconduct, [he] suffered and will continue to suffer injuries, damages and losses." Id. ¶ 49. Defendants subsequently filed their Motion to dismiss, asserting that Plaintiff's claims are time-barred by the applicable statute of limitations. Defendants' Memorandum of law (Dkt. No. 7-1) ("Defs.' Mem.") at 1.

### III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). Such a determination "requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556.

4

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, a pleader has not demonstrated that she is entitled to relief, and the action is subject to dismissal. See Iqbal, 556 U.S. at 678-79.

### IV. DISCUSSION

Defendants assert in their Motion that Plaintiff's claims are time-barred under N.Y. C.P.L.R. § 214-c(2). Defs.' Mem. 5. Section 214-c(2) establishes a three-year statute of limitations governing claims for "personal injury . . . caused by the latent effects of exposure to any substance or combination of substances."[2] The statute requires claims to be "computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." N.Y. C.P.L.R. § 214-c(2). Plaintiff's action was commenced on June 20, 2012. Compl. Therefore, if Plaintiff discovered or should have discovered his injuries on or before June 19, 2009, his claims are untimely.

Defendants contend that Plaintiff first discovered his injury six years before the commencement of this action, in 2006 after his initial shoulder surgery. Defs.' Mem. at 1. Defendants assert that the action began to accrue as soon as Plaintiff felt a "new and different pain" after the healing process following the surgery. Id. at 6. Specifically, Defendants point to Plaintiff's

---

[2]"Exposure" refers to direct or indirect exposure by absorption, contact, ingestion, inhalation, implantation, or injection. See N.Y. C.P.L.R. § 214-c(1).

5

initial complaints to Dr. Kerr of "clicking, popping, catching and pain" in April 2006 as evidence of discovery of the injury. Id. at 6. These symptoms became so severe that by the fall of 2006, Plaintiff was unable to swim or participate in recreational activities. Id. at 6. Defendants argue that the combination of these factors "are the symptoms, conditions and manifestations that form the basis of plaintiff's allegations," making Plaintiff's claims time-barred. Id. at 6.

Plaintiff contends that the claims are timely because "New York Courts have routinely held that a plaintiff discovers their injury . . . when the plaintiff 'is actually diagnosed as suffering from a particular disease.'" Resp. at 7 (quoting Sweeney v. General Printing, Inc., 621 N.Y.S.2d 132, 133 (App. Div. 1994)). Plaintiff argues that because he was diagnosed with chrondrolysis on "February 17, 2010 at the earliest and January 19, 2012 at the latest," his claims are not time-barred by the statute of limitations. Id. at 8. Further, Plaintiff asserts that Defendants' argument that discovery occurred at the first onset of his symptoms is without merit because New York case law has established that discovery of an injury "does not necessarily occur at the 'first onset of symptoms.'" Id. (quoting Braune v. Abbot Lab., 895 F. Supp. 530, 545 (E.D.N.Y. 1995)).

    *1. Discovery of the Latent Injury*

In In re New York County DES Litigation ("Wetherill"), 678 N.E.2d 474 (N.Y. 1997), the New York Court of Appeals determined that the phrase "discovery of the injury" in N.Y. C.P.L.R. § 214-c(2) means "discovery of the physical condition and not . . . the more complex concept of discovery of both the condition and the nonorganic etiology of that condition." Id. at 478. The Court of Appeals held that discovery of the condition refers to the discovery of "the primary condition on which the claim is based." Id. at 475. This requirement does not mean that a claimant must discover the exact nature of her injury; rather, she need only discover "the manifestations or

6

symptoms of the latent disease." Id. at 478; see also Harley v. 135 East 83rd Owners Corp., 655 N.Y.S.2d 507, 509 (App. Div. 1997) (holding that the plaintiff discovered her injury in 1987, when symptoms first began, despite receiving various different diagnoses of the cause until 1990). While the statute of limitations normally begins upon discovery, "there may be situations in which the claimant may experience early symptoms that are too isolated or inconsequential to trigger the running of the Statute of Limitations." Wetherill, 678 N.E.2d at 478 n.4.

Plaintiff argues that the date of diagnosis is the date of accrual of the statute of limitations and points to Wetherill to support this proposition. Resp. at 9. In Wetherill, the plaintiff brought claims against several diethylstilbestrol ("DES") manufacturers because she had been diagnosed with dysplasia, an incompetent cervix, a misshapen uterus, and had had several miscarriages as a result of her mother's ingestion of DES. Wetherill, 678 N.E.2d at 478. The Court of Appeals held that the plaintiff had discovered these conditions more than three years prior to the commencement of the action, meaning it was time-barred. Id. Plaintiff distinguishes himself from the plaintiff in Wetherill because he "was not diagnosed with chondrolysis, the injury for which damages are sought, until two years ago, at the earliest." Resp. at 10. Plaintiff concludes that Wetherill stands for the proposition "that the statute of limitations begins to run when a plaintiff discovers or is diagnosed with the primary condition for which damages are sought." Id.

The Court concludes that Wetherill does not stand for this proposition. In a subsequent case concerning N.Y. C.P.L.R. § 214-c(2), the New York Court of Appeals reiterated that the discovery rule required only "that plaintiff be aware of the primary condition for which damages are sought." Whitney v. Quaker Chemical Corp., 683 N.E.2d 768, 769 (N.Y. 1997). In that case, the plaintiff worked as a machine grinder for 27 years, during which time he was exposed to petroleum products

and coolant. Id. at 768. In 1989, he began to develop respiratory problems, resulting in difficulty in breathing, throat and chest pains, and coughing. Id. These symptoms prompted the plaintiff to make numerous visits to the hospital and health center, file a workers' compensation claim, and submit injury investigation reports to his employer. Id. The Court of Appeals held that "[n]either plaintiff's contention that his symptoms worsened . . . nor the diagnosis of a doctor . . . that substances other than the coolant caused his injury mak[e] his claim timely." Id. at 769. Courts in this district have also held that "for purposes of § 214-c(2), a cause of action for latent injury accrues when the plaintiff becomes aware of his symptoms, regardless of when he learns what caused those symptoms." Major v. Astrazeneca, Inc., Nos. 01-CV-618, 00-CV-1736, 2006 WL 2640622, at *19 (N.D.N.Y. Sept. 13, 2006). Here, Plaintiff's symptoms of chondrolysis began after his shoulder surgery, when he noticed the "new and different pain" in his shoulder. See Am. Compl. ¶ 22. Similar to the claimant in Whitney, Plaintiff had severe symptoms of pain that prompted him to make repeated visits to various doctors, establishing the "manifestation or symptoms" of his primary condition. See id. ¶¶ 22-34.

Although Plaintiff asserts that he believed his shoulder issues were "merely a continuation of his pre-existing shoulder injury," case law establishes that this is not a factor in the accrual of the statute of limitations. See id. ¶ 32. As the New York Court of Appeals held in Wetherill, "there is nothing in either the language of the statute or its history to suggest that the Legislature intended to make the running of the Statute of Limitations depend on claimants' subjective understanding of the etiology of their conditions." 678 N.E.2d at 479. That court reasoned that if this were the case, the triggering of the statute of limitations "would depend on such fortuitous circumstances as the medical sophistication of the individual plaintiff and the diagnostic acuity of his or her chosen

physician." Id. Here, Plaintiff saw numerous physicians, all of whom failed to diagnose chondrolysis as the root of his shoulder pain. See Am. Compl. ¶¶ 22-34. The Court notes that the New York rule forces patients to rely on the advice and expertise of their physicians in determining if a suit is appropriate. However, as the Wetherill court reasoned, the alternative rule would "giv[e] rise to an unacceptable degree of randomness and arbitrariness." 678 N.E.2d at 479 n.5. Further, even in cases where "a physician initially misdiagnosed the cause of the condition, the Wetherill rule applies and the claim accrues when the plaintiff is first aware of the condition for which the damages are sought." Bartlett v. Moore Bus. Forms, Inc., No. 96-CV-2632, 2000 WL 362022, at *4 (N.D.N.Y. Mar. 30, 2000) (citing Whitney, 683 N.E.2d 768).

*2. Isolated or Inconsequential Symptoms*

Sometimes a plaintiff may have recognized her symptoms, but the statute of limitations will not be triggered because they are "too isolated or inconsequential." Wetherill, 678 N.E.2d at 478 n.4. O'Halloran v. 345 Park Co. is illustrative of such a situation. 675 N.Y.S.2d 55 (App. Div. 1998). There, the claimant missed only two and a half days of work, never sought medical attention, and did not filed a workers' compensation claim. Id. at 55. The New York Supreme Court, Appellate Division, held that although "plaintiff may have exhibited some symptoms after her alleged exposure . . . these early symptoms [were] too isolated or inconsequential to trigger the running of the Statute of Limitations under CPLR 214-c(2)." Id. However, in Scheidel v. A.C. & S. Inc., the Appellate Division rejected the claimant's argument that his symptoms were too isolated or inconsequential to trigger the running of the statute of limitations. 685 N.Y.S.2d 829 (App. Div. 1999). There, the plaintiff had "experienced multiple manifestations of his condition or injury which affected virtually all physical activity." Id. at 831. Put simply, "Wetherill does not stand for

9

the proposition that a plaintiff has not discovered the primary condition upon which his claims are based until he becomes totally incapacitated by his symptoms. To the contrary, all that Wetherill requires is that the plaintiff's symptoms not be inconsequential or isolated." Neri v. R.J. Reynolds Tobacco Co., 185 F. Supp. 2d 176, 182 (N.D.N.Y. 2001) (citing Wetherill, 678 N.E.2d at 478 n.4).

Plaintiff's symptoms were not the sort of "isolated or inconsequential" symptoms referred to in Wetherill. Plaintiff first noticed the "new and different pain" symptoms following his February 2006 shoulder surgery. Am. Compl. ¶ 22. On April 11, 2006, Plaintiff made the first of many doctor's visits, complaining that his shoulder was "clicking, popping, catching and [was in] pain." Id.. From that point forward, Plaintiff consistently had issues with his shoulder, requiring numerous appointments with a number of different doctors. See id. ¶¶ 22-34. The condition has progressively worsened to the point that "[h]is daily life is [now] consumed with the devastation of a destroyed shoulder and the prospects of a life of pain and medication." Id. ¶ 36. Like the claimant's symptoms in Scheidel, Plaintiff's symptoms were severe to the point that he has "difficulty doing the most basic tasks of everyday living."

### 3. Accrual Date as a Factual Issue

Plaintiff also argues that Defendants' Motion must be denied because the accrual date of the statute of limitations is a factual issue that the jury must determine, pointing to the New York Supreme Court's decision in Shafranek v. Long Island Processor, Inc., 762 N.Y.S.2d 799, 801-02 (Sup. Ct. 2003). That court held that discovery of the plaintiff's injury was an issue of fact not allowing "resolution as a matter of law" due to the "paucity of detail and ambiguity of the described symptoms." Id. However, Plaintiff's symptoms differ from that of the plaintiff in Shafranek in that they consistently impacted Plaintiff's day-to-day life. Far from being ambiguous, Plaintiff's

10

shoulder pain was so severe that he made numerous trips to various different doctors, he lost flexibility and range of motion in his shoulder, and he became unable to swim or participate in recreational sports, all well over three years before he filed the Complaint. Am. Compl. ¶¶ 22-34. Therefore, the issue of discovery can be decided as a matter of law. Pursuant to Federal Rule of Civil Procedure 12(b)(6) and N.Y. C.P.L.R. § 214-c(2), the Court grants Defendants' Motion to dismiss Plaintiff's Amended Complaint in its entirety.[3]

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 7) to dismiss Plaintiff's Amended Complaint (Dkt. No. 14) is **GRANTED in its ENTIRETY**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 14) is **DISMISSED in its ENTIRETY with prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED**.

DATED:       March 29, 2013

---

[3] The Court also concludes that Plaintiff's fraud claims are untimely. While claims involving fraud generally are governed by a six-year statue of limitations under New York law, there is an exception "[w]here the allegations of fraud are only incidental to another cause of action." Grill v. Philip-Morris, USA, Inc., 653 F. Supp. 2d 481, 487 (S.D.N.Y. 2009) (quoting N.Y. Seven-Up Bottling Co. v. Dow Chem. Co., 466 N.Y.S.2d 478, 480 (App. Div. 1983)). Here, Plaintiff's fraud claims are incidental to his negligence and products-liability claims because "the gist" of each is the same. Larkins v. Glaxo Wellcome, Inc., No. 98-CV-4960, 1999 WL 360204, at *10 (E.D.N.Y. May 20, 1999). Therefore, the three-year statute of limitations that applies to Plaintiff's negligence and products-liability claims also applies to his fraud claims, rendering his fraud claims untimely. See id. The Court has considered Plaintiff's remaining arguments and has found them to be meritless.

Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge